# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENOVATION REALTY, INC., <br><br> Plaintiff, <br><br> v. <br><br> RENOVATION AND DESIGN, INC., et al., <br><br> Defendants. | Case No. 18-cv-723-BAS-MDD <br><br> **ORDER DENYING MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE** <br><br> **[ECF No. 11]** |

Presently before the Court is a Motion by Defendants Renovation and Design, Inc. and Renovation Design Realty, Inc. Defendants move the Court to dismiss Plaintiff Renovation Realty, Inc.'s Complaint for improper venue, or in the alternative, transfer venue to the Northern District of California. ("Mot.," ECF No. 11-1.) Also before the Court is Plaintiff's Opposition to the Motion, ("Opp'n," ECF No. 12), and Defendants' Reply in support of the Motion, ("Reply," ECF No. 13). The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **DENIES** Defendants' Motion.

# I. BACKGROUND

Plaintiff filed a Complaint against Defendants alleging trademark infringement, false designation of origin, and unfair competition. ("Compl.," ECF No. 1.) Plaintiff is the owner of the service mark and trade name RENOVATION REALTY® and the owner of the trademarks RENOVATION REALTY® and [logo: RENOVATION realty] (*Id.* at 2.)[1]

Plaintiff offers "full-service real estate brokerage and residential renovation contractor" services under and in connection with its trademarks. (*Id.* at 3.) "Plaintiff offers a variety of services including real estate consulting, contracting, real estate listing, brokerage, staging, and in many cases, uses its own capital or the equity in a client's property to renovate client's property." (*Id.*) Plaintiff alleges Defendant Renovation Design Realty ("RDR") is in the business of real estate brokerage and "has been offering and selling services using one or more trademarks strikingly similar and/or identical to one or more of Plaintiff's Renovation Realty® Registered Trademarks." (*Id.* at 5.) RDR offers design and renovation services that help sellers prepare their property for sale, and offers "expert negotiation [and] escrow management." (*Id.*) Plaintiff alleges Defendant Renovation and Design, Inc. ("R&D") is a component of Defendant RDR and also offers services using Plaintiff's trademark. (*Id.* at 6.) R&D "provides interior design, real estate staging, and renovation consultancy to private clients and property developers." (*Id.* at 5.)

In June 2017, Plaintiff sent RDR a cease and desist letter requesting Defendants stop all infringing activities. (*Id.* at 6; ECF No. 12-2, at 36.) In October 2017, RDR filed petitions with the Trademark Trial and Appeal Board to cancel

---

[1] The Complaint is mis-numbered and contains multiples of each paragraph number. The Court refers to the Complaint by page number rather than paragraph number to avoid confusion.

Plaintiff's trademarks. (Compl. at 6; ECF No. 12-2, at 25.) As a result, Plaintiff filed the present suit.

## II. LEGAL STANDARD

Federal venue determinations are governed exclusively by federal law. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988). Proper venue is generally based on the most convenient or fair forum as established by the various statutory criteria (such as defendants' residences or where the cause of action took place.) *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167 (1939). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) is the appropriate method to challenge improper venue. Under the general venue statute:

> A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants reside in the same State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Once a defendant challenges venue, the plaintiff bears the burden of showing that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In determining whether venue is proper, the Court may consider facts outside the pleadings probative of the issue of venue. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). If a court determines venue is improper, it may dismiss the case, or if it is in the interest of justice, the court may transfer the case to any other district in which it could have been brought. 28 U.S.C. § 1406(a); *Dist. No. 1, Pac. Coast Dist. v. Alaska*, 682 F.2d 797, 799 n.3 (9th Cir.

1982). Ultimately, the decision whether to dismiss or transfer rests in the court's sound discretion. *See King v. Russell*, 963 F.2d 1301, 1304–05 (9th Cir. 1992).

## III. ANALYSIS

The issue is whether venue is proper under 28 U.S.C. § 1391(b)(1).[2] For purposes of venue, a defendant corporation is "deemed to reside in any district in [the] State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." 28 U.S.C. § 1391(d). Defendants argue they do not have sufficient contacts in this district to subject them to personal jurisdiction. There is no question that Defendants are based in the Northern District, and Defendants state they have no offices or employees in this district. (Mot. 6.)

### A. Personal Jurisdiction

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). No party argues general jurisdiction exists in this case, thus, the Court analyzes specific jurisdiction. The Ninth Circuit has established a three-prong test for analyzing a claim of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Under the first prong, "purposeful direction" and "purposeful availment" are two different

---

[2] No party asserts a substantial part of the events giving rise to the claim occurred in this district. *See* 28 U.S.C. § 1391(b)(2).

concepts. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995). "A purposeful availment analysis is most often used in suits sounding in contract" and "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort" and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 802–03. As Plaintiff here has alleged causes of action sounding in tort, the Court will perform a purposeful direction analysis.

### 1. Whether Defendants Purposefully Directed Their Activities at This District

"In tort cases, [the court] typically inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (quoting *Schwarzenegger*, 374 F.3d at 803). This test, often referred to as the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). The defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (citing *Calder*, 465 U.S. 783). All three parts of the test must be satisfied. *Schwarzenegger*, 374 F.3d at 805. However, the Ninth Circuit has warned courts not to focus too narrowly on the effects prong of this test, holding that "something more" is needed in addition to a mere foreseeable effect. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).

#### a. Intentional Act

"Intent" refers only "to an intent to perform an actual, physical act in the real

world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Here, Defendants allegedly performed the act of using Plaintiff's trademarks on their website. (Compl. at 5.) *See Lindora, LLC v. Isagenix Int'l LLC*, 198 F. Supp. 3d 1127 (S.D. Cal. 2016) (finding that allegations that the defendant operated a website using infringing marks sufficiently established an intentional act under *Calder*); *Int'l Oddities v. Record*, No. CV 12–3934–CAS (VBKx), 2013 WL 3864050, at *5 (C.D. Cal. July 22, 2013) (finding that allegations that the defendant used an infringing mark to sell products on its website sufficiently established an intentional act under *Calder*). Accordingly, the first prong of the effects test is satisfied.

### b. Express Aiming

Plaintiff argues Defendants have expressly aimed their conduct at this district because their website "list[s] San Diego properties, complete with options to contact agents and request showings." (Opp'n 10.) Indeed, one may use Defendants' website to search and view available multiple listing service ("MLS") listings in San Diego County and other counties in California. (*See* ECF No. 12-2, at 9.)[3]

"[M]aintenance of a passive website alone cannot satisfy" the express aiming prong, but, operating a website "in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction." *Brayton Purcell*, 606 F.3d at 1129 (quoting *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1020 (9th Cir. 2002)). "In determining whether a nonresident defendant has done 'something more,' [the Ninth Circuit has] considered several factors, including the interactivity of the defendant's website, the geographic scope of the defendant's

---

[3] Plaintiff also points out that Defendants advertise the infringing mark on websites and social media pages which are "accessible to consumers located in the Southern District." (Opp'n 10.) This is a meritless argument, because the websites and social media pages are available to anyone with internet access. "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Mavrix Photo*, 647 F.3d at 1231.

commercial ambitions, and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Mavrix Photo*, 647 F.3d at 1229 (citations omitted). Express aiming can be shown where a corporation "continuously and deliberately" exploits the forum market for its own commercial gain. *Id.* at 1229–30 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 773–74, 781 (1984)).

In *Brayton Purcell*, plaintiff sued defendant for plagiarizing its website verbatim. 606 F.3d at 1157. Both parties were law firms practicing in the area of elder abuse law and both parties were residents of California. *Id.* at 1126–27. Plaintiff alleged that the defendant "placed the two law firms in competition in the area of elder abuse law and created confusion among potential clients as to the true authorship of the [plagiarized] elder abuse materials." *Id.* at 1130. The court held that the defendant (1) knew of plaintiff's existence, (2) targeted plaintiff's business, and (3) entered into direct competition with the plaintiff. *Id.* Accordingly, the court found that the express aiming prong was satisfied.

Here, Defendants' website has state-wide listings and users can locate real estate listings in various districts, thus the scope of the Defendants' commercial ambitions is broad. And it is true that Defendants did not create the MLS listings; the listings are simply available through their website. But Defendants allow customers to view listings in this district through Defendants' website. The evidence demonstrates that Defendants intend clients in this district to access and use their website, locate listings, and then contact Defendants' agents regarding the listings in this district. (*See* ECF No. 12-2, at 10–11 (showing seven listings of properties in San Diego).) Defendants assert "the actual listing offices and agents are displayed [with the search results] – not Defendants." (Reply 3.) This is true, but customers may also request a showing of the properties through Defendants' site. (ECF No. 12-2, at 21 ("Request a Showing").) It is not specified who would contact a customer who requests a showing. But it is commonsense that Defendants include the MLS properties on their site in an attempt to generate new business, likely through

referrals, future renovation projects, or through the use of Defendants' real estate agents. This places Plaintiff and Defendants' companies in competition because both companies work in the real estate and design markets and both seek business in this district. (Compl. at 3–6.) *See Brayton Purcell*, 606 F.3d at 1130 (nonresident defendant subject to specific jurisdiction "had every reason to believe prospective clients in [the forum] would see the website—indeed, attracting new business was the point"). This is evidence of targeting of Plaintiff in this district.[4]

Further, the Court acknowledges there is no evidence Defendants knew of Plaintiff's location at the time they began allegedly using the trademarks, but this changed when Plaintiff sent Defendants a cease and desist letter in 2017. (ECF No. 12-2, at 36–40 (cease and desist letter with attached trademark registrations which are registered to Plaintiff in La Mesa, California).) Defendants were then on notice that the trademarks were registered by a resident of this district. Afterwards, in October 2017, Defendant R&D filed a Petition for Cancellation for Plaintiff's trademark. (*See* ECF No. 12-2, at 25.) In the Petition, R&D provided that the Registrant (i.e., Plaintiff) is "a California corporation with its principal place of business in La Mesa, California." (*Id.* at 27.) This shows Defendants knew Plaintiff is located in this district. This knowledge is sufficient to turn what might otherwise have been Defendants' state-wide economic activity into "individualized targeting" of Plaintiff. *See Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 678–79 (9th Cir. 2012) (holding even if the defendant was not aware of the infringing product at the outset, it became aware its acts would impact the plaintiff "by virtue of the cease-and-desist letters it had received"). Such targeting satisfies the express aiming requirement. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.

---

[4] The Court has reviewed the declaration of Sammy Lee Hastings, who is the founder of RDR and R&D. (ECF No. 11-2.) Mr. Hastings declares, "Defendants do not solicit customers in the [sic] southern California." (*Id.* ¶ 6.) Although it is evident that Defendants' main goal is to solicit customers and developers in the northern district, the Court finds Defendants' website, through the MLS postings of available properties in this district, does indeed solicit customers in this district.

2002) ("[T]he 'express aiming' requirement . . . is satisfied when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" (quoting *Bancroft & Masters*, 223 F.3d at 1087)).

In sum, the Court finds Plaintiff has alleged facts demonstrating that Defendants engaged in conduct directly targeted or expressly aimed at this district. This prong of the effects test is met.

### c. Harm Likely to be Suffered in the Forum

The third and final prong of the purposeful direction inquiry requires that Defendants' actions "caused harm that [they] knew was likely to be suffered in the forum." *Brayton Purcell*, 606 F.3d at 1131 (citation omitted). The touchstone of this requirement is not the magnitude of the harm, but rather its foreseeability. *Yahoo! Inc.*, 433 F.3d at 1207. In an action for trademark infringement, it is foreseeable that the economic harm suffered by the owner of a trademark will be felt in the owner's home state. *Washington Shoe*, 704 F.3d at 679. Here, it is clear that harm is suffered by Plaintiff in this district because Plaintiff is located in and sells services using its trademark in this district. As noted above, Defendants were aware of Plaintiff's location, thus it was foreseeable that Plaintiff would suffer harm in this district.

In sum, the Court finds Plaintiff has established Defendants purposefully directed their activities at this district under the *Calder* effects test.

### 2. Whether Plaintiff's Claims Arise Out of Defendants' Forum-Related Contacts

The second requirement for specific personal jurisdiction is that the claim asserted in the litigation arises out of Defendants' forum-related activities. The Ninth Circuit follows a "but for" test in determining whether the claim "arises out of" the nonresident's forum-related activities, i.e., if plaintiff would not have suffered loss "but for" defendant's activities, this element is satisfied. *Ballard v. Savage*, 65 F.3d

1495, 1500 (9th Cir. 1995). Here, it is alleged Defendants used Plaintiff's trademark on their website which, among other things, generates business using real estate listings in this district. This competes with Plaintiff who also provides real estate services in this district, and thus, harms Plaintiff's business. But for Defendants' activities, Plaintiff would not have suffered loss. This element is met.

### 3.    Whether Jurisdiction is Reasonable

Once purposeful direction is established, a defendant may defeat jurisdiction only by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). The Court must consider whether maintenance of the action in this district offends "traditional notions of fair play and substantial justice." *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (internal quotations and citation omitted). In determining whether asserting jurisdiction is reasonable, the Court considers: "(1) the burden on the defendant, (2) existence of an alternative forum, (3) convenient and effective relief for the plaintiff, (4) the forum state's interest in adjudicating the suit, (5) efficient resolution of the controversy, (6) purposeful interjection, and (7) conflicts with sovereignty." *Id.* (citation omitted).

Defendants argue litigating this case in this district is unreasonable because they are based in the Northern District and have no contacts in this district. (Mot. 15.) Indeed, the Northern District is a more convenient location for Defendants and it would therefore be more burdensome for them if the case remains in this district. However, the Court foresees little evidence in this case that cannot be transported here electronically and therefore the burden is minimal. *Menken v. Emm*, 503 F.3d 1050, 1060 (9th Cir. 2007) (holding "with the advances in transportation and telecommunications and the increasing interstate practice of law, any burden is substantially less than in days past" (quoting *CE Distrib., LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004)). And, given the proximity of the two districts, the distance between the fora is not a travel inconvenience "so great as to constitute

a deprivation of due process." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir. 1995)). After considering the above factors, the Court finds Defendants have not demonstrated adjudication of this case in this district would be unreasonable.

In sum, Plaintiff has shown that Defendants purposefully directed their activities at this district and these activities relate to Plaintiff's claim. Defendants have not presented a compelling case that the exercise of jurisdiction would be unreasonable. The Court concludes Defendants "reside" in this district for purposes of venue. *See* 28 U.S.C. § 1391(b)(1). Venue is proper in this district and the Court therefore declines to dismiss or transfer this case.

## IV. CONCLUSION

For the foregoing reasons, the Court finds venue is proper in this district. The Court **DENIES** Defendants' Motion to Dismiss or Transfer.

**IT IS SO ORDERED.**

**DATED: November 26, 2018**

Hon. Cynthia Bashant
United States District Judge